**Juventino BALDERAS, Plaintiff-Appellant-Cross Appellee,**

v.

**La CASITA FARMS, INC., Defendant-Appellee-Cross Appellant.**

**No. 73-3699.**

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1974.

David G. Hall, Am. Civ. Liberties Union Foundation, San Juan, Tex., Jim Heidelberg, San Antonio, Tex., for plaintiff-appellant-cross appellee.

James A. Herrmann, Washington, D. C., for MLAP.

Gary R. Gurwitz, McAllen, Tex., for defendant-appellee-cross appellant.

Before TUTTLE, DYER and GEE, Circuit Judges.

DYER, Circuit Judge:

The United Farmworkers Organizing Committee (UFWOC) is a labor organization, active in the Rio Grande Valley of South Texas, consisting primarily of Mexican-American farmworkers. The principal issue presented in this case is whether an employer's discharge of a Mexican-American employee who is associated with the UFWOC contravenes Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e et seq., by virtue of the organization's official involvement in civil rights-related activities. We hold that under the circumstances of this case, it does not.

I

Balderas, a UFWOC sympathizer, was discharged on November 10, 1970, from his post as a maintenance truck operator

by his employer, La Casita Farms, a large agricultural enterprise located in the Rio Grande Valley of Texas. Prior to his dismissal, Balderas had been in La Casita's employ as a seasonal field worker for about fifteen years. In 1969, his non-permanent status as a seasonal employee was changed with a promotion to the year-round position of maintenance truck operator. His tenure with the company was terminated a year later, however, ostensibly because of his inadequate work performance in servicing field machinery. Notwithstanding La Casita's expressed reasons for his removal, Balderas was of the view that the actual cause of the discharge was his well-known association with the UFW-OC, which had been seeking periodically since 1966 to organize South Texas farmworkers. Accordingly, Balderas filed a written charge with the Equal Employment Opportunity Commission, alleging that a discharge stemming from anti-UFWOC animus was violative of Title VII, since the United Farmworkers union was seeking to promote the interests of an identifiable national group.[1] Following the EEOC's fruitless conciliatory efforts, Balderas timely filed suit in the court below, contending that his dismissal contravened three distinct statutes, namely Title VII, the 1866 Civil Rights Act, 42 U.S.C.A. § 1981, and the Texas Right-to-Work Law, Vernon's Ann.Civ.St. art. 5154g.

Following a bench trial, the district court concluded that Balderas was fired because of his union affiliation, even though his lengthy association with the organization had never been consummated in full membership. The court accordingly found the dismissal violative of Texas law, which proscribes denials of employment opportunities based on union membership or nonmembership, and awarded damages. On the other hand, Balderas' request for reinstatement was denied because of the court's conclusion that restoration would not be consistent with the former employee's own interests. Other than the Right-to-Work violation, the court found no Title VII or section 1981 abridgement resulting from the dismissal, inasmuch as the court concluded that no evidence supported the allegation that Balderas was discriminated against by virtue of his national origin. We agree that the discharge ran afoul of neither federal measure invoked by Balderas, that his removal nonetheless did violate Texas law, but we conclude that reinstatement was improperly denied and that damages were inaccurately determined.

## II

To come within the purview of Title VII, Balderas was obliged to demonstrate that his discharge resulted from La Casita's discrimination against him on account of his Mexican ancestry.[2] 42 U.S.C.A. § 2000e–2(a)(1). This burden was no small one, since the evidence demonstrated that La Casita's employees were overwhelmingly Mexican-American in national origin and that Balderas' own replacement was likewise of Mexican ancestry, two highly relevant, albeit nondispositive, factors.[3] To counter these ostensibly discrimination-free hiring practices, Balderas argues that the UFWOC's deep involvement in civil rights activities on behalf of Mexican-Americans creates a mantle of protection under Title VII benefiting any member of that organization who is fired because of his association with or membership in the group. To substantiate this thesis, Balderas invoked an

---

1. 42 U.S.C.A. § 2000e–2(a)(1).

2. Balderas is an American citizen and is thus not precluded from success under Title VII by virtue of non-citizenship, a form of discrimination which, in itself, is not interdicted by Title VII. *See* Espinoza v. Farah Mfg. Co., 1973, 414 U.S. 86, 94 S.Ct. 334, 38 L. Ed.2d 287.

3. *Espinoza, supra*, teaches that favorable employment statistics "do not automatically shield an employer from a charge of unlawful discrimination . . .", *id.* at 93, 94 S. Ct. at 339, but the relevance of such statistics and the fact that the employee's replacement was Spanish-surnamed cannot be doubted.

EEOC Guideline which provides that the Commission, in its efforts to eradicate covert as well as overt discriminatory practices, will examine with "particular concern" cases of equal opportunity denials "because of membership in lawful organizations *identified with or seeking to promote the interests of national groups*. . . ." 29 C.F.R. § 1606.-1(b) (emphasis supplied). In his effort to trigger the Guideline's applicability, Balderas successfully proved at trial that the UFWOC was indeed squarely within the literal language of the measure by virtue of the organization's efforts on behalf of Mexican-Americans in the Rio Grande Valley, a showing which La Casita does not contest.

■ Despite this proof of the United Farmworkers' endeavors *pro bono publico*, La Casita showed at trial, and the district court expressly found, that these efforts were essentially extracurricular, being incidental to UFWOC's primary object as a labor organization of attempting to solicit the support of Mexican-Americans working in the Rio Grande Valley. Moreover, in testimony at trial La Casita officials freely admitted their disapproval of the UFWOC, but nonetheless testified that their aversion was based upon its alleged organizational tactics *qua* labor union which were directed specifically at La Casita, including picketing, threats of violence, and a generous use of epithets and verbal abuse heaped upon La Casita employees.[4]

In response to this latter showing, Balderas attempted to prove that La Casita managers were in fact overtly prejudiced against their Mexican-American underlings, as evidenced by the paucity of Mexican-Americans occupying the few administrative positions at La Casita, and by one Anglo foreman's reference at trial to adult farmworkers as "boys." Nothing was adduced, however, to show that La Casita in any way objected to the United Farmworkers' non-

labor activities in civil rights causes nor that Balderas himself had ever engaged in civil rights activities, whether sponsored by the UFWOC or not. At bottom, therefore, Balderas proffers a *per se* rule of Title VII violations: whenever an employee is discharged because of his association with or membership in a labor union which is deeply identified with promoting the interests of a national group, Title VII is violated even if the employee himself is not shown to be engaged in civil rights activities and even though the employer's disapprobation of the union is shown to spring strictly from that organization's labor activities. We are convinced that Title VII, as construed by the Guideline, does not reach so far.

The language of Title VII indicates congressional concern with unlawful discrimination against *individuals* on specified, impermissible bases such as national origin. 42 U.S.C.A. § 2000e–2(a)(1). Federal protection is also extended to persons disparately treated because they have "opposed any practice made an unlawful employment practice. . . .", 42 U.S.C.A. § 2000e–3(a), even though their own race or national origin is not the basis of employer discrimination. In furtherance of these congressional policies and in recognition of the fact that not all unlawful practices are open or flagrant, the EEOC formulated the particular Guideline at issue in this case to focus on instances of covert discrimination against individual employees. It is toward this limited context that the Guideline is directed. It is not aimed at expanding Title VII's applicability beyond the intended ambit of individuals who are subjected either covertly or overtly to discriminatory employment practices.

And it is this indispensable element of discrimination against an individual employee which was not proved in this case—either discrimination based upon

---

4. La Casita consistently maintained that the particular discharge which prompted this litigation was based on Balderas' unsatisfactory work performance. Despite this protestation, the employer willingly confessed to anti-UFWOC sentiments.

the aggrieved person's national origin or upon the employee's opposition to unlawful practices, regardless of his own national origin. Balderas was not shown to be engaged at all in civil rights activities. In fact, his entire proof at trial established that he was associated with the UFWOC, which was itself actively engaged in civil rights work as part of its union organizational efforts. But whatever inference of illegality might have been raised by this showing in itself, the inference was dissipated by the uncontradicted evidence that La Casita discriminated against this UFWOC sympathizer because of its disapproval of the union's traditionally labor-oriented activities. Under the evidence, La Casita was strenuously objecting, and by improper means under Texas law, to the unionizing of its employees, not to anyone's civil rights activities. This dispute therefore reduces to a conflict only in labor-management relations, a genus of disputes completely outside the compass of Title VII.

### III

Balderas argues at great length that under the principles established in McDonnell Douglas Corp. v. Green, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, with respect to the burden of proof in Title VII actions, he must inevitably prevail in light of the proof which was forthcoming at trial. His reasoning is as follows: that he established a *prima facie* case of unlawful discrimination by showing that he was discharged due to his association with an organization working toward the betterment of Mexican-Americans; that this case was arguably rebutted by La Casita's evidence of Balderas' poor job performance; but that this purported justification was rebutted by proof that the employer's excuse for dismissal was pretextual, and therefore that the original *prima facie* case is resuscitated and stands uncontradicted. This seemingly logical progression has, however, two fatal deficiencies: first, the purportedly *prima facie* case was never proved, because, as previously stated, it was not demonstrated that La Casita's retaliation against a UFWOC sympathizer was tied to either the employee's or the union's civil rights activities. Again, all Balderas showed was that the UFWOC was active in civil rights affairs, but no nexus was ever demonstrated between these protected activities and La Casita's anti-union sentiments. Second, even though La Casita unsuccessfully protested that Balderas' discharge was justified for business reasons, proof that this purported reason was simply pretextual did not resurrect any prior showing by Balderas of discriminatory conduct based on national origin, even assuming *arguendo* that a *prima facie* case had been established, because the proof at trial demonstrated that the unsuccessful justification for the firing was an attempted coverup of La Casita's opposition to the union *qua* union. *McDonnell Douglas* is therefore not dispositive of this case, as Balderas would now have it.

### IV

Our conclusion that no proof was forthcoming to the effect that Balderas' discharge resulted from discrimination on account of national origin similarly disposes of any possible claim under the 1866 Civil Rights Act. We therefore are not confronted with, and we do not address, the issue whether section 1981 encompasses such claims if proof of national-origin discrimination exists. *See, e. g.,* Marshall v. Plumbers and Steamfitters Local Union 60, E.D.La.1972, 343 F.Supp. 70, 72; Schetter v. Heim, E.D. Wis.1969, 300 F.Supp. 1070, 1073.

### V

■ We are also convinced that the district court correctly found Balderas' discharge to be in violation of the Texas Right-to-Work law. The district court found, and its finding is not clearly erroneous, that La Casita fired Balderas because of the latter's union affiliation. In response, La Casita argues strenuously that Balderas' status with the union was insufficiently choate to warrant

protection under Texas law, since the controlling state statute speaks of "membership" in unions. The employer contends that Balderas' failure ever to pay UFWOC dues precludes the statute's applicability, since Balderas was indisputably not a full-fledged member.

The district court properly rejected this restrictive interpretation of Texas law in light of the teaching of the Texas Supreme Court in Lunsford v. City of Bryan, 1957, 156 Tex. 520, 297 S.W.2d 115. *Lunsford* states in unmistakable language that the precise status of the employee is not dispositive of the statute's applicability; accordingly, the Court held in that case that an employee who was not a full, dues-paid union member at the time of his discharge was nonetheless protected under Texas law. "The reason [for the discharge] in the mind of the employer, and not the exact status of the employee, should govern." *Id*. 297 S.W.2d at 117.

Here Balderas was a well-known UFWOC disciple. He had signed an authorization card, had actively proselytized the farm's employees on behalf of the union, and had frequented the union's headquarters to the chagrin of his superiors at La Casita. There was simply no question in the employer's mind as to where Balderas stood in the La Casita-UFWOC struggle. Under these circumstances, the federal courts are *Erie*-bound to give effect to the authoritative statutory construction embodied in *Lunsford*, and we accordingly hold that this discharge contravened Texas law.

 Although correctly determining the discharge to be invalid under state law, the court nonetheless denied Balderas' prayer for reinstatement, stating in conclusory language that reinstatement would not be in Balderas' own interests. We cannot fathom any way in which the fired employee would be disadvantaged by restoration to his former position, wrongfully denied him now for almost four years. He has not succeeded in obtaining a permanent post elsewhere, and his continual search for employment is frequently unsuccessful, or else his temporary posts demand his traveling substantial distances. Since the district court clearly enjoyed power to reinstate Balderas, not being disabled from so doing under Texas law, we conclude that this remedy was improperly denied.

In addition, our review of the record indicates the necessity of a remand for recomputation of damages. The district court awarded $250 in damages for the brief period of Balderas' unemployment extending from November 10 to November 30, 1970. Yet, the court found that while at La Casita, Balderas earned somewhere between $300 and $400 per month, while after his discharge he averaged $300 a month. From this finding alone, it is evident that Balderas sustained greater losses than those determined by the trial court. It is therefore necessary to remand for a precise computation of damages to compensate Balderas fully for the entire differential between pre- and post-discharge income.

In all other respects, including the grant and scope of injunctive relief, the district court's judgment was proper.

Affirmed in part; reversed in part; and remanded.