**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

v.

**FRY–WAGNER MOVING & STORAGE COMPANY, Local Union No. 610, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.**

No. 77–1255C(3).

United States District Court,
E. D. Missouri, E. D.

Feb. 27, 1979.

John P. Rowe, James R. Neely, Jr., E.E.O.C., Chicago, Ill., Gretchen Huston, District Counsel, E.E.O.C., St. Louis, Mo., for plaintiff.

Donald J. Meyer, St. Louis, Mo., for Fry-Wagner.

Barbeau A. Roy, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Equal Employment Opportunity Commission brought this suit pursuant to 42 U.S.C. § 2000e *et seq.*, alleging discrimination on account of race, and retaliatory actions as a result of opposition to unlawful employment practices.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1) Plaintiff Equal Employment Opportunity Commission ["EEOC"] is an agency of the United States of America and is authorized to bring civil actions. 42 U.S.C. § 2000e–5(f)(1). Defendant Fry-Wagner Moving & Storage Company was at all times relevant herein a corporation organized and existing pursuant to the laws of the state of Missouri. Said defendant does business within the state of Missouri, engaging in the moving and storage of furniture and other items in interstate commerce. Said defendant has continuously employed more than twenty-five employees and is an employer within the meaning of 42 U.S.C. § 2000e *et seq.* Miscellaneous Drivers and Helpers Union No. 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is an unincorporated association and labor organization within the meaning of 42 U.S.C. § 2000e *et seq.*

2) Defendant Fry-Wagner and defendant union had entered into a collective bargaining agreement. Said agreement set forth the employment classifications of driver, warehousemen, packer and helper. A helper was the lowest-paid classification.

3) On April 25, 1974, Ernest Davis, a black employee of defendant Fry-Wagner, reported to work. On the prior afternoon, a scheduled move had been cancelled; thus, Davis' services were not needed on April 25, 1974. Davis, however, had no telephone and could not be contacted regarding the change in work schedule. Of the persons scheduled to work on April 25, 1974, none were in Davis' classification, helper. The employees who did work on that date, however, were junior to Davis in seniority. Two of those employees were black. Davis filed a grievance contending that he should have been allowed to work on that date because of his seniority.

4) Davis informed the operations manager, Mike Bowzer, that he felt he had been the victim of discrimination; Davis did not state that he felt he had been discriminated on account of his race, nor did he advise Bowzer that he was going to file a charge with the EEOC. Davis did file a charge with the EEOC, however, on April 25, 1974.

5) A meeting was held on May 2, 1974 at which Milton Fry, president of defendant Fry-Wagner, declined to allow Davis to work in another classification. Said decision was based upon Davis' prior work record. Other white employees had also been restricted to working only within their classification.

6) On May 3, 1974, Davis was advised to report to work on Saturday, May 4, 1974 and to call in on Monday, May 6, 1974. On Monday, May 6, 1974, Davis called in at approximately 7:15 a. m. He spoke to John Pegg, a warehouseman, who checked a work schedule and advised Davis that he was scheduled to work on that date. Davis asked if it would be possible to get another man to replace Davis; Pegg stated that he did not have authority to advise Davis. Davis did not report to work on that date. In the afternoon on that same date, Davis again called and spoke to Mike Bowzer. Bowzer advised Davis that he was not scheduled to work on the following day and would not be until he could provide an explanation of his absence on May 6, 1974. Nevertheless, Davis did report for work on May 7, 1974 and provided Bowzer with a grievance which stated:

I, Ernest Davis was told to call in for work the date 5/6/74 and I did so but there was no one in authority to assure me of work Mike or Cliff or Mr. Fry and I have about 25 miles to drive to work.

After consultation between Bowzer and Fry, and a review of Davis' employment record, it was determined that Davis should be terminated. The relevant provision of the collective bargaining agreement then in existence provided:

Seniority shall be deemed broken and all privileges under this Agreement shall cease, when an employee

.    .    .    .    .

(3) Fails to report for work and notify his company of his inability to work without reasonable explanation thereof being presented within twenty-four (24) hours after his scheduled starting time.

.    .    .    .    .

7) Davis filed a grievance concerning his discharge and on May 7, 1974 filed a second charge with the EEOC with regard to the same.

8) Davis' work record was poor. In February, 1967, he was absent without calling in. In August, 1967, he was given a warning for failure to obey the orders of the driver, who was the supervisor on the job. Davis had refused to move a mattress which he had set down on top of an ant hill. In December, 1967, Davis had refused a driver's instruction to pack a mattress and some linens. This incident led to Davis' termination; he was reinstated three months later without back pay. In August, 1968, Davis was warned for dishonesty because of the falsification of a time card. In 1969 and 1970, he repeatedly refused to work in the warehouse; as a result, he was informed that he would forfeit his right to work in the warehouse when other work was not available. In 1970, he was warned about tardiness. In 1972, a large customer, Cargill, complained in writing about Davis' conduct on the job. The letter stated that Davis had thrown tools, did little work, and damaged furniture. Davis received an oral warning as a result. In January, 1974, he was again warned concerning his time card. In March, 1974, a letter was received from Graebel Moving Company, complaining about Davis' attitude and failure to work.

9) Following Davis' termination, Davis' grievance was processed through the grievance procedure. These efforts were unavailing. On July 24, 1974, by vote of the employees, a strike resulted and employees thereupon picketed Fry-Wagner's facility. The issue of racial discrimination was not raised at this meeting. In May, 1975, the employees, through their union's business representative, announced that they were ready to return to work. Mr. Fry stated that there was no work available for them. None of these employees has been rehired. Defendant Fry-Wagner no longer has a collective bargaining agreement with defendant union; the present employees are not union members.

10) The Court finds, based on the evidence adduced, that the decision to discharge Ernest Davis was not based, in whole or in part, upon Davis' race. The Court further finds that the decision not to schedule Davis for work as a packer, on April 25, 1974 or at any other time, was not based, in whole or in part, upon racial considerations. Although the collective bargaining agreement does provide that "[t]he principle of Company-wide seniority is hereby recognized", it is also provided that seniority does not apply to "[p]reference as to type or classification of work". The evidence herein established that a packer is sent into the customer's home to pack the items to be moved. A driver is in charge of the men actually performing the move. Davis' work record was sufficiently poor to justify a conclusion on the part of his employer that Davis would not properly fulfill the duties of a packer or driver. The evidence totally fails to establish that this decision resulted in any way from racial considerations. Davis' discharge was the result of his failure to report for work on May 6, 1974 or to provide an adequate excuse for his absence. Plaintiff points out that Davis was not instructed to report for work, but simply to call in which he did.

The evidence established, however, that when Davis did call, he was informed that he was scheduled for work. Davis made no attempt to contact any individual who had authority to excuse him from work that day, and he was unable to provide any excuse for his failure to report. In view of his past record, the decision to terminate Davis can not be deemed pretextual. Plaintiff also argues that the collective bargaining provision concerning failure to report to work does not support a discharge; it simply provides a break in seniority and a cessation of privileges. Assuming *arguendo*, however, that the discharge was improper under the terms of the collective bargaining agreement, the record fails to evidence the presence of any racial considerations.

11) The parties have stipulated herein that plaintiff did not issue a notice that charges of discrimination had been filed until May 9, 1974 and May 17, 1974. Thus, at the time of Davis' discharge, defendant Fry-Wagner had not received any notification that Davis had filed charges with the EEOC. The evidence simply fails to support the allegation that the discharge was in retaliation to Davis' opposition to unlawful employment practices. The evidence also fails to support the allegation that defendant Fry-Wagner's actions with respect to its striking employees was in retaliation for opposition to unlawful employment practices. The employees did not consider racial issues to be the issue leading to the strike and the record fails to reflect any evidence that defendant Fry-Wagner considered such issues to be involved. The strike was simply the result of a dispute over the interpretation of the collective bargaining agreement; the matter of civil rights was not an issue.

## CONCLUSIONS OF LAW

This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 42 U.S.C. § 2000e *et seq.*

■ This Court has found that Ernest Davis was not assigned to work as a packer or driver, and was subsequently discharged, because of his poor work record and his failure to report to work without any adequate excuse. Davis was not discriminated against on account of his race, nor for opposing unlawful employment practices. Thus, Title VII of the Civil Rights Act of 1964, as amended, was not violated. *Christian v. General Motors Corporation*, 341 F.Supp. 1207 (E.D.Mo.1972), *aff'd*, 475 F.2d 1407 (8th Cir. 1973).

Any denial of Davis' rights under the collective bargaining agreement was unrelated to his race, or to his filing of charges with the EEOC. Accordingly, there is no liability herein. *Cf., Balderas v. La Casita Farms, Inc.*, 500 F.2d 195 (5th Cir. 1974).

Title 42 U.S.C. § 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The evidence established that there was no mention made of racial discrimination when the employees decided to strike. That decision resulted from a determination by the employees that Davis' discharge violated the provisions of the collective bargaining agreement. The evidence further established that defendant Fry-Wagner did not view the strike as a result of a claim of racial discrimination or retaliatory discharge. This Court has found that Davis was not discriminated against on account of his race or because he opposed unlawful employment practices. In view of the findings of this Court, the actions taken by Fry-Wagner with respect to the striking employees can not give rise to liability herein.

■ Defendant Fry-Wagner has requested that it recover attorney's fees herein. Although attorney's fees may be awarded to a prevailing party, 42 U.S.C. § 2000e–5(k), fees may only be awarded to a prevailing defendant

. . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

Although the Court is of the opinion that plaintiff's position herein was exceedingly weak, the Court concludes that an award of attorney's fees to defendant would not be appropriate.

Accordingly, judgment will be entered for defendants, at plaintiff's costs. 42 U.S.C. § 2000e–5(k).