**656**

Flora GUY

v.

**PEACHES RECORDS & TAPES, INC., Defendant.**

No. 78–535–C(3).

United States District Court, E. D. Missouri, E. D.

Sept. 28, 1979.

Howard, Singer & Meehan, Raymond Howard, Jr., St. Louis, Mo., for plaintiff.

Hayes & Heisler, Daniel B. Hayes, James W. Sherby, Clayton, Mo., for defendant.

MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits following a trial to the Court sitting without a jury. Plaintiff brings her suit in two counts alleging in Count I violations of 42 U.S.C. § 2000e et seq., and alleging in Count II violations of 42 U.S.C. § 1981 and the Thirteenth and Fourteenth amendments to the United States Constitution. In both counts plaintiff alleges specifically racial discrimination in employment.

The Court having considered the pleadings, the testimony of witnesses, the documents in evidence, and the record as a whole, and otherwise being fully advised of the premises hereby makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. Additionally, the Court regards any findings of fact that are equally applicable as conclusions of law to be conclusions of law.

FINDINGS OF FACT

1. Plaintiff Flora Guy is a black female citizen of the United States residing in the City of St. Louis, Missouri.

2. Defendant Peaches Records and Tapes, Inc., is a California corporation engaged in business in Missouri as a retailer of musical records and tapes.

3. On November 28, 1975 plaintiff was hired by defendant as a cashier to work in its new store in Dellwood, Missouri. Prior to this date she had worked as a manager of Melody Music, Inc., a smaller music store, and as a co-manager of Moneytown, Inc., a business involved in, *inter alia*, the selling of food stamps. She began work on December 1, 1975 and the store opened its doors to the public shortly thereafter on December 5, 1975. Her rate of pay was $2.75 per hour.

4. The store had no formalized promotional procedure for its employees, nor was there any union or seniority promotional system. Rather, the promotions were made

on the basis of the personal observations of Gary Chaney, the Store Director at all times relevant to this action. His criteria included the observable work performance of the employees, their experience, attitude and compatibility with other employees.

5. On January 5, 1976 plaintiff was promoted to the position of Head Cashier for the day shift. Her duties in that position included handling merchandise returns, taking hourly cash register readings and supervising the three daytime cashiers. Plaintiff's salary was then raised to $3.00 per hour. At the same time Eugene LaRosa, a white male, was selected as Head Cashier for the night shift at a salary of $3.00 per hour. The cashiers under plaintiff's supervision were white.

6. Between February and June 14, 1976, plaintiff's date of discharge, several serious problems developed in plaintiff's work. Plaintiff had called radio stations from the store to request the playing of certain records. Plaintiff denied that she used the name of the store, however, and the record supports her. Also, she did stop making the requests when reprimanded. Additionally, plaintiff approached record distributors and requested her own copies of certain promotional records. She ceased this activity only after being reprimanded. Most seriously, plaintiff was involved in a number of verbal altercations with the cashiers under her supervision. Plaintiff claims that the only disputes that arose were the result of her enforcement of the rules restricting smoking and gum chewing by the cashiers while on duty. At one point in April, after considerable bickering between the three cashiers and plaintiff, a meeting was held with Gary Chaney, the Store Director, in which disciplinary matters and supervision were discussed. He testified that by this time on four to five occasions plaintiff had sought to supervise those under her in a manner so overly zealous and severe that confrontations occurred in the front of the store in the presence of customers. Chaney felt that, although plaintiff may have been technically correct in her interpretation of the rules regarding smoking and gum chewing, her lack of judgment and failure to

work compatibly with her fellow workers became a disruption of business. After the April meeting the bickering continued, although plaintiff did not seek the help of her superiors who were responsible for discipline at the store. Plaintiff's problems with her attitude and supervision skills showed that she not only had problems coping with her situation as Head Cashier, but also that she contributed to the disruption noted above.

7. Plaintiff had been passed over for promotions she requested prior to the emergence of her problems in supervision noted above. The Court finds that on those occasions the positions, including those of Assistant Manager and Store Manager, went to more qualified individuals. After the disruptions noted above plaintiff's lack of promotion was based on sound business judgment and was for good cause. Additionally, plaintiff's further promotion would have required working regularly during evening hours which, for personal reasons, she indicated was not acceptable to her.

8. Plaintiff had also sought work elsewhere while in defendant's employ. The record shows, however, that this activity in no way affected defendant's decision not to promote her, nor did it in any way cause defendant to discharge her.

9. Both plaintiff and LaRosa, the other Head Cashier, were paid $3.00 per hour. Also, the cashiers on plaintiff's day shift were subsequently given pay raises to $3.00 per hour. These raises were based on merit and time served with the store and do not reflect disparate treatment of plaintiff.

10. Shortly before her discharge plaintiff learned of a scheme being employed by which various workers were skimming money from cash registers by not ringing up sales properly, thereby pocketing the money and making the shortage appear to be the result of stock shrinkage. Instead of immediately reporting the action to her superiors who were responsible for store discipline, however, plaintiff instead worked the scheme herself in an attempt to show that it could be effected. This Court finds that

plaintiff's decision to duplicate the scheme rather than report it to be further example of poor supervisory judgment on her part. This Court does not find that plaintiff took any money intending to embezzle it. Nor does the Court find that defendant terminated plaintiff for such a reason. Rather, the Court finds that plaintiff's decision to duplicate the scheme showed poor judgment which was a factor in her subsequent discharge.

11. On June 14, 1976, near the time for plaintiff's six months review and evaluation, plaintiff was discharged for the reasons noted above. Defendant adduced testimony to the effect that plaintiff's position as Head Cashier was the last step before entering management of the company and that her poor judgment and lack of supervisory skills not only justified its failure to promote plaintiff but also required her discharge. Defendant did note, however, that plaintiff had done well at her tasks of check verification, handling register tapes, overseeing check authorization, voiding transactions and maintaining cash in the drawers. Nonetheless, her problems in work performance, as noted above, showed that she was incapable of doing an adequate job, despite her prior experience in sales and management. This Court finds that plaintiff's discharge was based on her inadequate work performance due to her lack of supervisory skills and poor judgment, and was not racially or sexually motivated.

12. After plaintiff's discharge the two cashiers from her shift who were thought to be involved in the embezzlement scheme were offered polygraph tests in an effort by defendant to determine their involvement in the scheme (the third cashier under plaintiff's supervision having quit prior to the discovery of the scheme). Of the two, one resigned at that time and the other was terminated upon her refusal to take the polygraph examination. Plaintiff asserts that the offer of the polygraph to the two cashiers shows discriminatory treatment because she was not allowed to establish her innocence in the scheme. Here the Court makes no finding that she was ever involved in embezzlement. Assuming her innocence of any intent to steal, therefore, the Court finds only that she exercised poor judgment in her decision to secretly duplicate the scheme herself to see how it was in fact put into operation. As such, this further bolsters the Court's reasoning that plaintiff's discharge was for good cause and not pretextual. Furthermore, the record shows clearly that her termination was effected prior to the disciplinary action taken against the other two cashiers. Finally, plaintiff was not the victim of disparate treatment on the basis that Donald Rhea, the Store Manager at the time of plaintiff's termination, was not fired despite the fact that his own polygraph test indicated some awareness of the embezzlement scheme on his part. Again, however, this occurred after plaintiff was terminated for other, justifiable reasons. Additionally, it was determined that Rhea's involvement in or knowledge of the scheme was so minimal, if he indeed knew anything at all, that severe disciplinary action was unwarranted. The Court, therefore, finds no disparate treatment in the defendant's handling of plaintiff as compared with its handling of Donald Rhea.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 2000e et seq. and 1981, and 28 U.S.C. §§ 1331 and 1343(4). Plaintiff has complied with the applicable time limits required by 42 U.S.C. § 2000e et seq.

■ Plaintiff has not shown that her lack of further promotion, rate of pay or discharge were racially or sexually motivated in violation of 42 U.S.C. § 2000e et seq. or § 1981. Nor has plaintiff made a prima facie case of discrimination sufficient to require defendant to rebut the showing. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Had plaintiff made such a showing, however, defendant's evidence amply discharges its burden of proof in rebuttal. *McDonnell Douglas Corp. v. Green, supra.*

Both plaintiff and defendant have requested attorneys' fees in this action. As plaintiff has not prevailed on any of her claims, her request will be denied. 42 U.S.C. § 2000e–5(k). And as defendant has not shown that plaintiff's action was frivolous, unreasonable ·or without foundation, the Court concludes that attorneys' fees on its behalf are unwarranted. *Christiansburg Garment Company v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Accordingly, defendant's request for attorneys' fees will be denied.